FILED
2022 Apr-11  PM 02:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ALBERT LEE DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:18-cv-2100-MHH-GMB |
| | ) | |
| C. MELTON, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff Albert Lee Davis filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 alleging violations of his rights under the Constitution or laws of the United States. Doc. 1. Davis names the following defendants in the complaint: Captain J. Hutton, Lieutenant Wilson, Sergeant S. Walker, Sergeant James Q. Sealy, and Correctional Officer Cordaro Melton. Doc. 1 at 1−5.[1] The court granted Davis' motion to amend his complaint to add Dr. Pavlakovic and Sergeant Jameson Parker as additional defendants. Docs. 23 & 30. Davis seeks monetary and injunctive relief. Doc. 1 at 7; Doc. 23 at 5–6; Doc. 45. Consistent with the usual practices of this court and 28 U.S.C. § 636(b)(1), the court referred the complaint to a Magistrate Judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136

---

[1] The court has dismissed Davis' claims against Corizon Health, Inc.; the Alabama Department of Corrections; and Bibb Correctional Facility. Doc. 10.

(1991).   For the reasons below, the Magistrate Judge recommends that the defendants' motion for summary judgment be granted in part and denied in part.

## I. PROCEDURAL HISTORY

On January 30, 2020, the court entered an Order for Special Report directing the Clerk of Court to forward copies of the complaint to defendants Hutton, Wilson, Walker, Sealey, and Melton, and ordering them to file a special report addressing Davis' factual allegations. Doc. 11.  After granting Davis' motion to amend his complaint to add defendants Pavlakovic and Parker, the court entered a Second Order for Special Report directing the Clerk to forward copies of the amended complaint to the defendants. Doc. 31.  The court advised the defendants that the special report could be submitted under oath or accompanied by affidavits and, if appropriate, the court would consider it to be a motion for summary judgment filed pursuant to Federal Rule of Civil Procedure 56. Docs. 11 & 31.

Parker's summons was returned unexecuted on September 14, 2021. Doc. 55. Counsel filed a suggestion of death for Pavlakovic on October 4, 2021. Doc. 58.

Defendants Hutton, Wilson, Walker, Sealey, and Melton filed their special report and supported it with affidavits and other evidence. Doc. 17.  The court construed their special report as a motion for summary judgment and notified Davis that he had 21 days to respond to the motion by filing affidavits or other evidence. Doc. 57.  The court also advised Davis of the consequences of any default or failure

to comply with Rule 56. Doc. 57; *see Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985).  Although the court granted Davis' motion for an extension of time to respond to the motion for summary judgment, Davis did not file a response. Doc. 60.[2]  The motion for summary judgment is ripe for review.

## II.  STANDARD OF REVIEW

Because the court has construed the defendants' special report as a motion for summary judgment, Federal Rule of Civil Procedure 56 governs the resolution of the motion.  Under Rule 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party.  *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000).  The burden of proof is upon the moving party to establish his *prima facie* entitlement to summary judgment by showing the absence of genuine issues of material fact and that he is due to prevail as a matter of law.  *See Clark v. Coats & Clark, Inc*., 929 F.2d 604, 608 (11th Cir. 1991).  Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence establishing each element of his claim, all other issues of fact become

---

[2] Davis filed a "settlement proposal" on December 2, 2021 (Doc. 62), but he did not respond substantively to the motion for summary judgment.

immaterial and the moving party will be entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532–33 (11th Cir. 1990).  As the Eleventh Circuit has explained,

> [f]acts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case.  "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial."  Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof.  This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett*, 898 F.2d at 1532 (citations omitted).

However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment. *See Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986)).  Additionally, because the plaintiff is *pro se*, the court must construe the complaint more liberally than it would pleadings drafted by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980).  A *pro* se pleading "is held to a less stringent standard than a pleading drafted by an attorney." *Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015).

## II. SUMMARY JUDGMENT FACTS[3]

On October 5, 2017, at about 6:15 a.m., Davis was in his cell sleeping on the top bunk. Doc. 1 at 4 & 7.  He awoke to a loud tapping noise and saw Officer Melton standing in front of him while holding a set of keys. Doc. 24 at 1.  As Davis climbed down from the bed, Melton grabbed his leg. Doc. 1 at 4; Doc. 24 at 1.[4]  Davis asked Melton to let go of his leg, and Melton told Davis to hand him the cell phone lying on his bed. Doc. 24 at 2.  Melton instead threw the phone to an inmate nearby since it belonged to that inmate. Doc. 24 at 2.[5]  After the other inmate left Davis' cell, Melton sprayed Davis with mace. Doc. 1 at 4; Doc. 24 at 2.  Davis jumped off the bed and attempted to run, but fell and landed on his left arm. Doc. 1 at 4; Doc. 24 at 2.  Melton handcuffed Davis and began to beat Davis with his fists. Doc. 1 at 4; Doc. 24 at 2.  Melton then began to strike Davis on his back, head, and arms with a baton. Doc. 1 at 4; Doc. 24 at 3.  Inmate Willie Knight witnessed the assault and later corroborated Davis' description of the incident. Doc. 24 at 9–11.

Melton radioed for help from other correctional officers. Doc. 23 at 3.  Davis could not see them, but he heard Lieutenant Wilson and Sergeant Parker arrive in

---

[3] Consistent with the summary judgment standard, the following facts are undisputed or, if disputed, taken in a light most favorable to the non-moving party.

[4] Melton contends that Davis attempted to climb off of the opposite side of the bed, so Melton grabbed Davis' leg to prevent him from fleeing. Doc. 17-4 at 1.

[5] Melton states that Davis first dropped the cell phone on the ground and then tried to retrieve it. Doc. 17-4 at 1.  Melton pushed Davis to the ground, and Davis hit his head on a bed as he fell. Doc. 17-4 at 1.

the cell, and he heard Melton tell Wilson about his refusal to hand over the cell phone. Doc. 24 at 3.  Melton told Parker to call the health care staff. Doc. 24 at 3. During transport to the health care unit, Davis told Parker he gave the cell phone back to the other inmate instead of giving it to Melton because he would have had to pay $1,000 if he lost the cell phone. Doc. 24 at 3–4.

The mental health and medical staff evaluated Davis. Doc. 1 at 4; Doc. 17-2 at 10.  Davis reported that he was assaulted, and the medical chart reflects a swollen knot on his head and his complaint of an injury to his posterior ribs. Doc. 17-1 at 6; Doc. 17-2 at 24.  Davis' x-ray and abdomen reports were normal. Doc. 17-2 at 20, 26, 78.  Davis reported the assault to the mental health staff. Doc. 17-2 at 71.  Davis also told a nurse and Dr. Pavlakovic that he had been assaulted and did not feel well, but they only treated him with aspirin and intravenous fluids instead of sending him to the emergency room. Doc. 23 at 1, 5; Doc. 17-2 at 19, 21; Doc. 24 at 4, 6.

Davis later reported the assault to Captain Hutton, Wilson, Sergeant Sealy, Sergeant Walker, and Parker. Doc. 1 at 5; Doc. 23 at 1, 3–4; Doc. 24 at 3–5.  They all laughed and told Davis he could not prove his allegations. Doc. 1 at 5, 10; Doc. 24 at 6.[6]  Davis asked them whether they had seen the surveillance footage of the

---

[6] Hutton, Wilson, and Walker deny telling David that he could not prove that Melton assaulted him. Doc. 17-3; Doc. 17-6; Doc. 17-7.  And Sealey claims he was not present during the incident on October 5, 2017. Doc. 17-5.

assault, but they did not respond. Doc. 1 at 5, 10; Doc. 24 at 4–6.  Walker told Davis to sign three disciplinary reports, but Davis refused. Doc. 24 at 5.  Davis asked Walker for a grievance form, but Walker told him there were no grievance forms available and gave him a statement form instead. Doc. 24 at 5.  Davis admits he falsely reported in his statement that Melton tried to look at his penis while he was in bed because he was angry about the assault. Doc. 24 at 5.  Hutton instructed Wilson to place Davis in a cell, but there were no cells available, so Wilson told Walker to place Davis in the behavior modification dorm. Doc. 1 at 5; Doc. 24 at 6.[7]

A few days later on October 10, Davis received treatment for nausea, vomiting, and abnormal vital signs, and the staff kept him in the health care unit for observation. Doc. 17-2 at 22, 64–65.  Davis began to vomit green bile the next day. Doc. 1 at 4, 7; Doc. 17-2 at 10, 17; Doc. 24 at 6.  The staff transported Davis to Brookwood Medical Center for surgery, where a hospital physician told him that he could have died the next day without treatment because he had an infection that was close to spreading from his intestines to his lungs and heart.[8] Doc. 1 at 4; Doc. 17-2 at 18; Doc. 24 at 6.  Davis remained in the hospital for two months, and he has a permanent knot on his forehead and a surgical scar. Doc. 1 at 5, 7, 10; Doc. 17-2 at

---

[7] Wilson stated that Davis was placed into behavior modification for assaulting an ADOC employee. Doc. 17-7 at 2.

[8] On Davis' discharge summary, the doctor noted he had "horrible exudate on every bit of his peritoneal surface.  It almost looked like mold . . . far greater than the usual inflammatory exudate from a perforation that presents acutely within a few hours of occurrence." Doc. 17-2 at 29.

29; Doc. 24 at 6.  His discharge diagnoses included acute peritonitis, acute kidney injury, blunt trauma, duodenal perforation, septic shock, malnutrition, small bowel obstruction, ileus, and abdominal abscesses. Doc. 17-2 at 29.

When Davis returned to the prison, he requested a grievance form, but Sergeant Sealey told him the prison no longer had a grievance procedure. Doc. 24 at 7.  After more time in the health care unit, Hutton placed Davis in a segregation cell, but Warden Bennett released Davis back into the general population and apologized to him. Doc. 24 at 7.

Davis pled not guilty at the hearing on his disciplinary charges for failure to obey a direct order, unauthorized possession of a phone, and assault of an officer. Doc. 24 at 7.  Walker nevertheless found Davis guilty on all charges. Doc. 24 at 7. Warden Bennett later rejected the guilty findings on all three disciplinary charges. Doc. 24 at 7.

### III. ANALYSIS

#### A.    Sergeant Parker

Parker is due to be dismissed without prejudice because Davis never served him with the complaint.  The court entered a Second Order for Special Report directing Parker to waive service of process within 40 days and file a Special Report addressing Davis' allegations in the amended complaint within 60 days. Doc. 31. This order was returned to the court as undeliverable. Doc. 35. At the court's

direction, the Alabama Department of Corrections then submitted the last known address for Parker under seal. Docs. 37 & 38.

The court again ordered Parker to file a waiver of service and special report, but this order also was returned to the court as undeliverable. Docs. 40, 42 & 43. The court then directed the United States Marshals Service to serve an alias summons and the amended complaint on Parker at his last known address. Docs. 53 & 54.  The summons was returned unexecuted with the notation, "Lot 18 at this address is empty.  The trailer is removed.  I spoke with a neighbor who confirmed that it has been empty for about one month." Doc. 55.

Reasonable efforts thus have been made to locate Parker, but he has not been served with the amended complaint.  Accordingly, Parker is due to be dismissed without prejudice pursuant to Federal Rule of Civil Procedure 4(m).

## B.    Dr. Pavlakovic

Defense counsel submitted a statement noting the death of Dr. Pavlakovic. Doc. 58.  Counsel stated that he mailed a copy of the Suggestion of Death and the complaint to Richard Albert Pavlakovic, Dr. Pavlakovic's nearest relative, and to Lori Nester, the emergency contact contained in Dr. Pavlakovic's employment file. Doc. 58 at 1.  Counsel further certified that Davis received the Suggestion of Death by United States Mail. Doc. 58 at 2.

Federal Rule of Civil Procedure 25 allows for the substitution of a litigant

upon that party's death but provides that if a "motion for substitution . . . . is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed." Fed. R. Civ. P. 25(a)(1).  In some instances, a plaintiff must initiate the process for a personal representative to be appointed for the deceased defendant, who would then be substituted as the defendant in the action. Davis has not made that effort here. *See* Fed. R. Civ. P. 25(a)(1) (providing that "[a] motion for substitution may be made by any party"); *Carruth v. Smyth*, 2018 WL 804272, at *3 (N.D. Ala. Feb. 9, 2018) (noting that the plaintiff knew or should have known that he could open an estate for a deceased defendant in finding that it was "incumbent on [the plaintiff] to open an estate").  No one has appeared and filed a motion to substitute a defendant for Dr. Pavlakovic even though defense counsel served the Suggestion of Death on Davis. Doc. 58 at 2.

More than 90 days have passed without a motion for substitution of the deceased party.  Therefore, the court recommends the dismissal without prejudice of Davis' claim against Dr. Pavlakovic pursuant to Federal Rule of Civil Procedure 25(a)(1).

## C.    Official Capacity Claims

The Eleventh Amendment bars § 1983 claims against a state or an agency of the state. *See Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Eleventh Amendment immunity "has also been extended to state officials, acting in

their official capacity, where an agency or individual may 'be treated as an arm of the State partaking of the Eleventh Amendment Immunity.'" *Melton v. Abston*, 841 F.3d 1207, 1233 (11th Cir. 2016), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)).  "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity or Congress has abrogated the state's immunity." *Id*.  Congress has not waived and Alabama has not abrogated its Eleventh Amendment immunity. *Id*. at 1234.  As a result, "Alabama state officials are immune from claims brought against them in their official capacities." *Id*.  For this reason, defendants Melton, Hutton, Wilson, Sealy, and Walker are immune from suit in their official capacities for Davis' claims seeking monetary damages.  The defendants' motion for summary judgment on Davis' claims against them in their official capacities is due to be granted.

## D.    Injunctive Relief

In addition to monetary damages, Davis requests that the warden discipline and demote the defendants.[9] Doc. 23 at 6.  But the "federal courts have no authority to address state officials out of office or to fire state employees." *Newman v. Alabama*, 559 F.2d 283, 288 (5th Cir. 1977), *reversed in part on other grounds by*

---

[9] Davis states that "'Officer Melton' became 'Sergeant Melton'" one month after the disciplinary hearings. Doc. 24 at 7.

*Alabama v. Pugh*, 438 U.S. 781 (1978); *see also Hill v. Davis*, 2020 WL 6781630, at *4 (S.D. Ga. Nov. 18, 2020) (applying *Newman* in denying prisoner's request to demote defendant), *adopted*, 2020 WL 7489755 (S.D. Ga. Dec. 21, 2020); *Atkinson v. Owens*, 2014 WL 4716224, at *4 (M.D. Ga. Sept. 22, 2014) (finding that the court has no authority to order an officer's demotion).

Davis also requests an injunction requiring the defendants "to cease all illegal acts towards all inmates in Bibb County Corrections." Doc. 23 at 6.   But Davis cannot seek relief on behalf of other inmates. *See In re Checking Acc't Overdraft Litig.*, 780 F.3d 1031, 1038 (11th Cir. 2015) ("[A] party generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.").   In addition, Davis is no longer housed at Bibb Correctional Facility where the incident occurred (*see* Doc. 61), and thus even his request for injunctive relief at Bibb on his own behalf is moot. *See Owens v. Centurion Med.*, 778 F. App'x 754, 758 (11th Cir. 2019) (holding that "a prisoner's transfer . . . from a correctional facility generally will moot his claims for injunctive relief").   For these reasons, Davis cannot obtain the injunctive relief he requests.

## E.   Individual Capacity Claims

The Eleventh Amendment does not immunize state officials from § 1983 claims against them in their individual capacities. *Melton*, 841 F.3d at 1234.   Davis claims that Melton subjected him to cruel and unusual punishment in violation of

the Eighth Amendment by using excessive force against him on October 5, 2017, while he was handcuffed, causing him serious injury. Doc. 1 at 4, 7; Doc. 23 at 4. Davis also claims that Hutton, Wilson, Sealy, and Walker were deliberately indifferent to his safety because they were aware of Melton's excessive force but failed to take any action against him. Doc. 1 at 5, 10; Doc. 23 at 4.  The court will address these claims in turn.

### 1.   *Excessive Force*

The Eighth Amendment's proscription of cruel and unusual punishments protects prisoners from prison officials' excessive use of force. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999).  The federal courts analyze excessive force claims under the standards set forth in *Hudson v. McMillian*, 503 U.S. 1 (1992), and *Whitley v. Albers*, 475 U.S. 312 (1986).  This analysis includes both a subjective and an objective component: (1) whether "the 'officials act[ed] with a sufficiently culpable state of mind'" and (2) whether "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Hudson*, 503 U.S. at 8 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 303 (1991)).

For the subjective component of the analysis, "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id*. at 7.  The relevant factors include: (1) the need for any application of force, (2) the relationship between that need and

the amount of force used, (3) the threat reasonably perceived by the responsible official, (4) any efforts to temper the severity of a forceful response, and (5) the extent of the injury suffered by the inmate. *Id*. at 6; *see also Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007).

The objective component of an excessive force claim "focuses on whether the official's actions were harmful enough . . . or sufficiently serious to violate the Constitution." *Sconiers v. Lockhart*, 946 F.3d 1256, 1265 (11th Cir. 2020) (internal quotation marks and citations omitted).  The Supreme Court has "rejected the notion that 'significant injury' is a threshold requirement for stating an excessive force claim." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).  Instead, "the Eighth Amendment prohibits force that offends 'contemporary standards of decency,' regardless of whether 'significant injury is evident,' though the extent of injury may shed light on the amount of force applied or 'whether the use of force could plausibly have been thought necessary.'" *Sconiers*, 946 F.3d at 1265 (quoting *Wilkins*, 559 U.S. at 37). Although the Eleventh Circuit has rejected a bright-line standard requiring more-than-de-minimis injury, the Eighth Amendment still "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Sconiers*, 946 F.3d at 1265–67 (citing *Wilkins*, 559 U.S. at 37–38).

"Prison administrators . . . should be accorded wide-ranging deference in the

adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520 (1979).  Generally, courts "do not second-guess prison officials on matters that they are better equipped to handle under the exigencies of an internal disturbance." *Wilson v. Blankenship*, 163 F.3d 1284, 1295 (11th Cir. 1998).

Davis claims that Melton assaulted him by spraying him with mace, handcuffing him, and then beating him with closed fists and a baton. Doc. 1 at 4; Doc. 24 at 2–3.  Davis went to the infirmary, where he reported that Melton had assaulted him. Doc. 1 at 4.  The medical chart reflects that Davis had a swollen knot on his head and pain in his posterior ribs. Doc. 17-1 at 6.  Six days later, Davis began vomiting and was transported to Brookwood hospital, where he remained for two months. Doc. 1 at 4–5, 7, 10; Doc. 24 at 6.  His discharge diagnoses included acute peritonitis, acute kidney injury, blunt trauma, duodenal perforation, septic shock, malnutrition, small bowel obstruction, ileus, and abdominal abscesses. Doc. 17-2 at 29.

Melton disputes many of the details of this incident in his affidavit testimony, including the amount of force necessary to subdue Davis so that Melton could handcuff him. Doc. 17-4 at 1.  However, the court must take Davis' sworn claims as

true at the summary judgment stage.[10]   And based on Davis' version of events, a reasonable juror could conclude that Melton used excessive force against him.  The law of the Eleventh Circuit "prohibit[s] the use of excessive force by a prison guard against an inmate" who is restrained and "pose[s] no continuing threat." *Davis v. Locke*, 936 F.2d 1208, 1213 (11th Cir. 1991) (citations omitted) (pulling a handcuffed inmate by his ankles from a cage, causing him to fall, constitutes excessive force); *see also Harris v. Chapman*, 97 F.3d 499, 505–06 (11th Cir. 1996) (holding evidence a group of officers restrained an inmate with a towel and then beat and verbally harassed him after he refused to submit to a haircut is sufficient to support a jury's finding of an Eighth Amendment violation); *Williams v. Cash-C.O.I.*, 836 F.2d 1318, 1320 (11th Cir. 1988) (holding allegations that officers "deliberately broke [inmate's] elbow after he had ceased to resist their efforts to return him to his cell" were sufficient to support an Eighth Amendment excessive force claim at summary judgment); *Harris v. Whitehead*, 2007 WL 2300964, at *7–8 (M.D. Ala. Jul. 30, 2007) (finding unconstitutional force where the defendants used physical force on an inmate after he was handcuffed and had ceased physical resistance but remained verbally uncooperative).  In short, "[i]t is excessive force for a jailer to continue using force against a prisoner who already has been subdued."

---

[10] In responding to Davis' sexual assault accusations, Melton claims that video surveillance shows that Davis was clothed when the incident occurred. Doc. 17-1 at 1; Doc. 17-4 at 2.  However, Melton has not submitted any recordings of the incident to the court.

*Nasseri v. City of Athens*, 373 F. App'x 15, 19 (11th Cir. 2010).

Construing the excessive force allegations and the record evidence in the light most favorable to Davis, a reasonable jury could conclude that Melton continued to use force against Davis after he was handcuffed and subdued.  For this reason, summary judgment on this claim is due to be denied.

### 2.   *Supervisory Liability*

Davis asserts that defendants Hutton, Wilson, Sealy, and Walker watched the video recordings of Melton's assault after it occurred but took no action against Melton. Doc. 1 at 5, 10; Doc. 23 at 1, 3–4; Doc. 24 at 3–6.  "It is well established in this circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates 'on the basis of respondeat superior or vicarious liability.'" *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (quoting *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994)).  However, "[s]upervisory liability under section 1983 may be shown by either the supervisor's personal participation in the acts that comprise the constitutional violation or the existence of a causal connection linking the supervisor's actions with the violation." *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988), *superseded by rule on other grounds by Harrigan v. Metro Dade Police Dept.*, 977 F.3d 1185 (11th Cir. 2020).

To show a causal connection, Davis must establish: (1) a "history of widespread abuse" that puts the responsible supervisor on notice of the need to

correct the alleged deprivation, even though he fails to do so; (2) a supervisor's custom or policy that results in deliberate indifference to constitutional rights; or (3) facts supporting an inference that the supervisor directed subordinates to act unlawfully or knew they would act unlawfully and failed to stop them from doing so. *Valdes v. Crosby*, 450 F.3d 1231, 1237 (11th Cir. 2006). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *West v. Tillman*, 496 F.3d 1321, 1329 (11th Cir. 2007) (internal quotation marks and citation omitted).

Davis has not alleged that any of the defendants personally participated in Melton's assault or witnessed the assault while it was happening.  And he has made no showing of a causal connection.  Finally, Davis does not allege that the defendants implemented specific customs or policies resulting in the alleged constitutional violation, directed Melton to act unlawfully, or knew Melton would act unlawfully and failed to stop him from doing so.

Even assuming Davis' claims are true, one assault does not constitute widespread, continuous abuse such that the defendants were on notice that Melton would violate prison policies.  And although Davis complains that he was prevented from filing a grievance about the incident (Doc. 24 at 7), a "prisoner is not entitled to grievance procedures under the Constitution." *Wallace v. Hamrick*, 229 F. App'x

827, 829 n.4 (11th Cir. 2007) (citing *Wildberger v. Bracknell*, 869 F.2d 1467, 1467–68 (11th Cir. 1989)).  Davis has failed to prove causation such that he can proceed on a claim against the defendants for supervisory liability.  Accordingly, summary judgment on this claim is due to be granted.

## IV. CONCLUSION

 For the reasons stated above, the Magistrate Judge RECOMMENDS that:

1.     The claims against Defendant Parker be DISMISSED without prejudice pursuant to Federal Rule of Civil Procedure 4(m);

2.     The claims against Defendant Dr. Pavlakovic be DISMISSED without prejudice pursuant to Federal Rule of Civil Procedure 25(a)(1);

3.     The motion for summary as it relates to Davis' claims against Defendants Melton, Hutton, Wilson, Sealy, and Walker in their official capacities be GRANTED;

4.     The motion for summary judgment as it relates to Davis' request for injunctive relief against Melton, Hutton, Wilson, Sealy, and Walker be GRANTED;

5.     The motion for summary for summary judgment as it relates to Davis' claim for excessive force against Melton in his individual capacity be DENIED; and

6.     The motion for summary for summary judgment as it relates to Davis' claims for supervisory liability against Hutton, Wilson, Sealy, and Walker be GRANTED.

## V.  NOTICE OF RIGHT TO OBJECT

Any party may file specific written objections to this report and recommendation.  A party must file any objections with the Clerk of Court within 14 calendar days from the date the report and recommendation is entered.  Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objecting.  Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address.  Objections should not contain new allegations, present additional evidence, or repeat legal arguments.  An objecting party must serve a copy of its objections on each other party to this action.

Failing to object to factual and legal conclusions contained in the magistrate judge's findings or recommendations waives the right to challenge on appeal those same conclusions adopted in the district court's order.  In the absence of a proper objection, however, the court may review on appeal for plain error the unobjected to factual and legal conclusions if necessary in the interests of justice. 11th Cir. R. 3-1.

On receipt of objections, a United States District Judge will review *de novo* those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the undersigned's findings of fact and recommendations.  The district judge must conduct a hearing if required by law. Otherwise, the district judge may exercise discretion to conduct a hearing or

otherwise receive additional evidence.  Alternately, the district judge may consider the record developed before the magistrate judge, making an independent determination on the basis of that record.  The district judge also may refer this action back to the undersigned with instructions for further proceedings.

A party may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  A party may only appeal from a final judgment entered by a district judge.

DONE and ORDERED on April 11, 2022.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE